UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

RAMON SERRUD SIRIAS,

      Petitioner,

v.                                    Case No: 2:14-cv-23-FtM-29CM

SECRETARY,   DEPARTMENT   OF
CORRECTIONS   and   ATTORNEY
GENERAL, STATE OF FLORIDA,

      Respondents.[1]

_____

## OPINION AND ORDER

This matter comes before the Court upon a petition for habeas corpus relief filed pursuant to 28 U.S.C. § 2254 by Ramon Serrud Sirias ("Petitioner") who is presently confined at the Walton Correctional Institution in DeFuniak Springs, Florida (Doc. 1, filed January 8, 2014). Petitioner, proceeding *pro se*, attacks a conviction entered by the Circuit Court in Lee County, Florida for lewd and lascivious battery. Id. Respondent filed a response to the petition (Doc. 29). Petitioner filed a reply (Doc. 42).

_____

[1] When the petitioner is incarcerated and challenges his present physical confinement "the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." Rumsfeld v. Padilla, 542 U.S. 426, 436 (2004)(citations omitted). In Florida, the proper respondent in this action is the Secretary of the Florida Department of Corrections. Therefore, the Florida Attorney General will be dismissed from this action.

Petitioner raises nineteen separate claims for relief in his petition.  Upon due consideration of the pleadings and the state-court record, the Court concludes that each claim must either be denied or dismissed as unexhausted.  Because the Court may resolve the Petition on the basis of the record, an evidentiary hearing is not warranted.  See Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (if the record refutes the factual allegations in the petition or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing).

## I.   Background and Procedural History

On January 25, 2006, Petitioner was charged with one count of lewd or lascivious battery in violation of Florida Statute § 800.04(4)(b).   After a jury trial, Petitioner was found guilty as charged and sentenced to fifteen years in prison (Ex. 1, Vol. I at 78, 91-96).[2]  Petitioner's conviction and sentence were per curiam affirmed (Ex. 6); Sirias v. State, 17 So. 3d 1233 (Fla. 2d DCA 2009).

On August 19, 2010, Petitioner filed a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of

---

[2] Unless otherwise indicated, references to volumes, exhibits and appendices are to those filed by the Respondent on November 12, 2014 (Doc. 31).  Citations to the trial transcript, located in Volumes I, II, and III, will be cited as (T. at ___).  Citations to the sentencing hearing, located in Volume I will be cited as (S.H. at ___).  Citations to the post-conviction court's order denying Petitioner's Rule 3.850 relief, located in Exhibit nine, will be cited as (P.C.O. at ___).

Criminal Procedure ("Rule 3.850 motion") in which he raised seventeen claims of ineffective assistance of trial counsel (Ex. 8). The post-conviction court denied each claim (Ex. 9). Florida's Second District Court of Appeal *per curiam* affirmed (Ex. 11); Sirias v. State, 84 So. 3d 320 (Fla. 2d DCA 2012).

Contemporaneously with the Rule 3.850 motion, Petitioner filed a motion to disqualify his trial judge from presiding over the Rule 3.850 proceeding (Ex. 13). The judge denied the motion as legally insufficient. Id. Petitioner then filed a petition for writ of prohibition in Florida's Second District Court of Appeal, again seeking to disqualify his trial judge from presiding over his Rule 3.850 proceeding (Ex. 14). The appellate court denied the petition with prejudice (Ex. 16); Sirias v. State, 52 So. 3d 670 (Fla. 2d DCA 2011).

Petitioner filed a second Rule 3.850 motion on May 29, 2012 which was denied as successive and untimely (Ex. 17). Florida's Second District Court of Appeal *per curiam* affirmed (Ex. 18); Sirias v. State, 119 So. 3d 1260 (Fla. 2d DCA 2013).

Petitioner signed the instant petition on December 18, 2013 (Doc. 1).

## II.  Governing Legal Principles

### A.  The Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This standard is both mandatory and difficult to meet. White v. Woodall, 134 S. Ct. 1697, 1702 (2014). A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference. Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008). Notably, a state court's violation of state law is not sufficient to show that a petitioner is in custody in violation of the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Wilson v. Corcoran, 562 U.S. 1, 16 (2010).

"Clearly established federal law" consists of the governing legal principles, rather than the dicta, set forth in the decisions of the United States Supreme Court at the time the state court issued its decision. White, 134 S. Ct. at 1702; Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams v. Taylor, 529 U.S. 362,

412 (2000)). That said, the Supreme Court has also explained that "the lack of a Supreme Court decision on nearly identical facts does not by itself mean that there is no clearly established federal law, since 'a general standard' from [the Supreme Court's] cases can supply such law." Marshall v. Rodgers, 133 S. Ct. 1446, 1449 (2013) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). State courts "must reasonably apply the rules 'squarely established' by [the Supreme] Court's holdings to the facts of each case. White, 134 S. Ct. at 1706 (quoting Knowles v. Mirzayance, 556 U.S. 111, 122 (2009)).

Even if there is clearly established federal law on point, habeas relief is only appropriate if the state court decision was "contrary to, or an unreasonable application of," that federal law. 29 U.S.C. § 2254(d)(1). A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. Ward v. Hall, 592 F.3d 1144, 1155 (11th Cir. 2010); Mitchell v. Esparza, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable

manner, Brown v. Payton, 544 U.S. 133, 134 (2005); Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Bottoson, 234 F.3d at 531 (quoting Williams, 529 U.S. at 406). The petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." White, 134 S. Ct. at 1702 (quoting Harrington v. Richter, 562 U.S. 86 (2011)). Moreover, "it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." Knowles, 556 U.S. at 122.

Finally, when reviewing a claim under § 2254(d), a federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Miller-El v. Cockrell, 537 U.S. 322, 340 (2003) ("a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented

in the state-court proceeding") (dictum); Burt v. Titlow, 134 S. Ct. 10, 15-16 (2013) (same).

## B.  Ineffective Assistance of Counsel

In Strickland v. Washington, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. 466 U.S. 668, 687-88 (1984).  A petitioner must establish that counsel's performance was deficient and fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. Id.  This is a "doubly deferential" standard of review that gives both the state court and the petitioner's attorney the benefit of the doubt. Burt, 134 S. Ct. at 13 (citing Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011)).

The focus of inquiry under Strickland's performance prong is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688-89.  In reviewing counsel's performance, a court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689.  Indeed, the petitioner bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable[.]" Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006).  A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time

of counsel's conduct," applying a "highly deferential" level of judicial scrutiny. Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690).

As to the prejudice prong of the Strickland standard, Petitioner's burden to demonstrate prejudice is high. Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002). Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. At 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

## C.   Exhaustion and Procedural Default

The AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless a petitioner has exhausted all means of available relief under state law. Specifically, the AEDPA provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
>
> > (A) the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B)

> (i)     there is an absence of available
>         State corrective process; or
>
> (ii)    circumstances exist that
>         render   such   process
>         ineffective to protect the
>         rights of the applicant.

28 U.S.C. § 2254(b)(1) (2012).

Exhaustion of state remedies requires that the state prisoner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights[.]" Duncan v. Henry, 513 U.S. 364, 365 (1995) (citing Picard v. Connor, 404 U.S. 270, 275-76 (1971)).  The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim.  Snowden v. Singletary, 135 F.3d 732 (11th Cir. 1998).  In addition, a federal habeas court is precluded from considering claims that are not exhausted but would clearly be barred if returned to state court. Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991) (if a petitioner has failed to exhaust state remedies and the state court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims).  Finally, a federal court must dismiss those claims or portions of claims

that have been denied on adequate and independent procedural grounds under state law. Coleman, 501 U.S. at 750. If a petitioner attempts to raise a claim in a manner not permitted by state procedural rules, he is barred from pursuing the same claim in federal court. Alderman v. Zant, 22 F.3d 1541, 1549 (11th Cir. 1994).

Procedural default will be excused only in two narrow circumstances. First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both "cause" for the default and actual "prejudice" resulting from the default. "To establish cause for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." Wright v. Hopper, 169 F.3d 695, 703 (11th Cir. 1999) (internal quotation marks omitted). To establish prejudice, a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. Henderson v. Campbell, 353 F.3d 880, 892 (11th Cir. 2003).

The second exception, known as the fundamental miscarriage of justice, only occurs in an extraordinary case, where a "constitutional violation has probably resulted in the conviction of one who is actually innocent[.]" Murray v. Carrier, 477 U.S. 478, 479-80 (1986). Actual innocence means factual innocence, not legal insufficiency. Bousley v. United States, 523 U.S. 614, 623

(1998).   To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. Schlup v. Delo, 513 U.S. 298, 327 (1995).   In addition, "[t]o be credible, a claim of actual innocence must be based on [new] reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324).

## III. Analysis

### A.   Claims One, Two, and Fourteen

In Claim One, Petitioner argues that he was denied his due process right to an impartial magistrate during his sentencing hearing (Doc. 1 at 5).   Specifically, he asserts that after complaining to the sentencing court that he had not received the services of the attorney whom he had paid, he received a fifteen-year sentence which was greater than both the original plea deal offered by the state and the ten-year sentence asked for by the prosecutor at the sentencing hearing. Id.   In Claim Two, Petitioner asserts that trial counsel was ineffective for failing to move to disqualify the judge during the sentencing hearing. Id. at 7.   In Claim Fourteen, Petitioner re-asserts that trial counsel was ineffective "for failing to file a motion to disqualify the trial judge at sentencing." Id. at 30.   Petitioner raised the first two claims on direct appeal where they were rejected by Florida's Second District Court of Appeal (Ex. 3; Ex. 5).

Petitioner raised the third claim in his Rule 3.850 motion where it was denied by the post-conviction court on the ground that Petitioner received a legal sentence and "[u]nder the totality of the circumstances, the Court finds no presumption of vindictiveness in this case, and Defendant has not demonstrated any actual vindictiveness." (P.C.O. at 21-22).  A review of the record supports the state courts' conclusions.

Due process assures every litigant, civil or criminal, of a trial by an impartial court, free of bias or the appearance of bias. Ward v. Village of Monroeville, 409 U.S. 57, 62 (1972); Tumey v. Ohio, 273 U.S. 510, 532 (1927). In the criminal context, this right continues through the trial, including the sentencing, if the defendant is convicted or pleads. Gardner v. Florida, 430 U.S. 349, 358 (1977) ("[I]t is now clear that the sentencing process, as well as the trial itself, must satisfy the requirements of the Due Process Clause[.]"). Any alleged judicial bias must "stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." United States v. Grinnell Corp., 384 U.S. 563, 583 (1966).  The Supreme Court has recognized that most matters relating to judicial disqualification do not rise to a constitutional level and that matters of kinship, personal bias, state policy, or remoteness of interest would seem generally to be matters merely of legislative discretion. Caperton v. A.T. Massey

_Coal Co., Inc._, 556 U.S. 868, 876 (2009) (citing _Federal Trade Commission v. Cement Institute_, 333 U.S. 683 (1948); _Tumey_, 273 at 510).

During Petitioner's sentencing hearing, the state presented testimony from the victim's mother and two aunts (S. H. at 11-15). Each testified that the victim had been highly traumatized by Petitioner's sexual assault and asked that the court impose the maximum sentence. _Id._ Petitioner presented the testimony of six witnesses who testified that Petitioner was a hard worker and nice person. _Id._ at 3-18. Afterwards, Petitioner testified and asked for a suspended sentence. _Id._ at 18-20. He also told the judge that he had initially hired Joe Simpson as his attorney, and that Simpson had assured him that his case "would be resolved with, you know, just a battery charge and probation before, you know, before he would take the chair[.]" _Id._ at 20.[3] Petitioner was unhappy that his case had not been "resolved in a manner which Mr. Simpson assured me of." _Id._ at 19-20.

Immediately after Petitioner testified, the victim's grandfather asked the court to impose the maximum sentence (S.H. at 21). Thereafter, the state asked the court to impose a sentence of 120 months in prison and five years of probation. _Id._ At that point, Petitioner's trial attorney told the court that he was

---

[3] Simpson was elected judge before Petitioner's trial. Other attorneys from his firm took over his defense.

unaware of Petitioner's dissatisfaction with his law firm's representation and asked the court to inquire whether Petitioner wished for him to continue at the sentencing hearing. Id. at 22-23.  The court responded:

> I'm not sure exactly why he brought that up.
> I strongly suspect it was in some way to
> influence the Court, the fact that I am a
> professional colleague of Judge Simpson and a
> personal friend for some 25 years.  And all I
> can tell him is, it's backfired.
>
> . . .
>
> He has made no motion to have you relieved
> from responsibility for this case.   You
> zealously represented him at trial.   It was
> not an easy case to defend.  You made vigorous
> argument and vigorously defended him.  I don't
> think there's any question about that.  Even
> a post-conviction motion or no that might be
> filed in the future, which seems to be the
> (inaudible) way of doing things.  No.  I saw
> a trial that was vigorously prosecuted and
> vigorously defended, both able attorneys, and
> the jury made their decision.

Id. at 23.   The court sentenced Petitioner to fifteen years in prison, the maximum under Florida law.  Id.

Petitioner's assertion that the judge sentenced him to fifteen years in prison in retaliation for his expression of dissatisfaction with his attorney is, at best, speculative.  At trial, the court heard testimony that, when she was fourteen, the victim went to Petitioner's house with Carolyn Olsen, her babysitter.  She, Petitioner, and Olsen sat on Petitioner's back porch drinking beer (T. at 140).  The victim became sick from the

alcohol, so Olsen told her to go inside and take a bath. Id. at 144. After the bath, Petitioner carried her to his bed. Id. at 147. Later, Petitioner came to the bed, pulled down the victim's pants, and put two fingers in her vagina. Id. at 152-53. He returned to the room several times, performed oral sex on the victim and ejaculated on the victim. He attempted to clean the ejaculate from the victim with his hands and put his fingers inside her vagina. Subsequently, he inserted his penis into the victim's anus and attempted to insert his penis into her vagina. Id. at 148-161. When the victim tried to turn over, Petitioner grabbed her arm, turned her back over, and pulled down her pants. Id. at 205-07. The next day, the victim told Olsen what had happened, and Olsen took her to the hospital. Id. at 168-69. Law enforcement was notified. Id. at 170-71. Petitioner's semen was found on the victim's labia. Id. at 274, 306-07.

Petitioner has not shown that the court's sentence was based upon anything other than the evidence presented at trial and the sentencing-hearing testimony from the victim's family members who asked that Petitioner receive the maximum sentence. The United Supreme Court has noted:

> [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus,

> judicial remarks during the course of a trial
> that are critical or disapproving of, or even
> hostile to, counsel, the parties, or their
> cases, ordinarily do not support a bias or
> partiality challenge. They may do so if they
> reveal an opinion that derives from an
> extrajudicial source; and they will do so if
> they reveal such a high degree of favoritism
> or antagonism as to make fair judgment
> impossible.
>                          . . .
>
> Not establishing bias or partiality, however,
> are expressions of impatience,
> dissatisfaction, annoyance, and even anger,
> that are within the bounds of what imperfect
> men and women, even after having been
> confirmed as federal judges, sometimes
> display. A judge's ordinary efforts at
> courtroom administration—even a stern and
> short-tempered judge's ordinary efforts at
> courtroom administration—remain immune.

Liteky v. United States, 510 U.S. 540, 555-56 (1994).  The

sentencing court's short expression of annoyance at Petitioner's

disparagement of his substitute counsel was within the bounds of

"ordinary efforts at courtroom administration" and does not prove

constitutional bias. Id. at 556.

Petitioner has not satisfied his burden of showing how the

appellate court's rejection of Claim One was contrary to Liteky or

to any other United States Supreme Court case.  Nor has Petitioner

shown that the rejection was based upon an unreasonable

determination of the facts.  Because the Second DCA reasonably

rejected Claim One, Petitioner cannot demonstrate Strickland

prejudice from counsel's failure to seek disqualification of the

judge at the sentencing hearing.  Accordingly, Petitioner is not entitled to habeas relief on Claims One, Two, or Fourteen of his habeas petition. 28 U.S.C. § 2254(d).

**B.   Claim Three**

Petitioner asserts that trial counsel was ineffective for advising him to reject a favorable plea offer of one year in prison plus probation (Doc. 1 at 9).  Specifically, he alleges that he rejected the offer because counsel told him that he would call Olsen and an expert witness to testify at trial.  Id.  He also claims that he was never advised that he could receive a sentence of fifteen years in prison if convicted to trial.  Id.[4]

Petitioner raised this claim in his Rule 3.850 motion, and the state court rejected the claim as follows:

> As to Ground 3, Defendant argues that counsel
> was ineffective for allowing Defendant to
> reject a favorable plea offer of one year in
> prison followed by ten years' probation.
> Defendant contends that trial counsel told him

---

[4] Petitioner did not make this last assertion in his Rule 3.850 motion (Ex. 8 at 24-27).  Because a claim is exhausted only to the extent it was raised in the state court, the Court will assume that Petitioner intends to raise the same claim as Ground Four in his Rule 3.850 motion. Any expanded claim would be unexhausted.  Moreover, the state post-conviction court specifically found that Petitioner admitted counsel informed him of the plea offer and the possible sentence he faced, prior to his rejection of the plea (P.C.O. at 8).  This is a finding of fact that Petitioner has not refuted with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).  Finally, to the extent Petitioner attempts to offer new evidence to the Court in the form of his affidavit (Doc. 3), this Court cannot consider evidence that was not first presented to the state court. Cullen v. Pinholster, 563 U.S. 170 (2011).

Ms. Olsen would testify, that the jury would hear evidence of the victim's motive to lie, and that a defense expert would testify regarding an alleged "accidental transfer theory." Defendant argues that if he had known none of those things would happen, he would have accepted the plea offer, and that his decision to reject the plea offer was not voluntary or informed. To be entitled to relief based on ineffective assistance of counsel for advising a defendant to reject a plea offer, the "defendant must allege and prove that (1) counsel failed to convey a plea offer or misinformed the defendant concerning the possible sentence he faced, (2) the defendant would have accepted the plea but for counsel's failures, and (3) acceptance of the plea would have resulted in a lesser sentence than was ultimately imposed. See Cottle, 733 So. 2d at 967." Morgan v. State, 991 So. 2d 835, 839-840 (Fla. 2008). Defendant has not, and cannot, make a proper allegation, since he concedes that counsel informed him of the plea offer and the possible sentence he faced.

Rather, Defendant argues that his claim is not that counsel advised him to reject the plea, but that counsel misadvised him as to what evidence would be presented at trial, and if he had known this evidence would not be presented at trial, he would have accepted the plea. This is a hindsight argument. From counsel's opening argument, it appears that counsel believed Ms. Olsen would be called by the State and would testify, and so this statement was not mis-advice. Further, counsel did argue that the victim had a motive to lie, and did attempt to elicit testimony regarding that premise. That he did not ask all the questions Defendant now believes he should have asked, in as aggressive a manner as Defendant now wishes, does not render counsel's statement mis-advice, nor does it render counsel's performance deficient. The standard is reasonably effective counsel, not perfect or error-free counsel. Coleman v. State, 718 So. 2d 827 (Fla. 4th DCA 1998);

<u>Schofield v. State</u>, 681 So. 2d 736 (Fla. 2d DCA 1996).

The Court finds that even had counsel called an expert on the alleged "accidental transfer theory," such expert's testimony would not have a reasonable probability of changing the outcome. The theory, as described by Defendant in his motion, speculates that the victim was wet and had direct contact with her genitals on an allegedly semen soiled towel, clothing, or sheets. Even if an expert on this theory existed, and even if the jury found this theory credible, the record contradicts that the victim was wet, that the clothing or towel were soiled with Defendant's semen, or, as Defendant alleged, that the sick victim "rolled around" on a semen-soiled bed sheet in such a manner as to put direct contact between her genitals and the soiled sheet. Carolyn Olsen testified during deposition that she dried part of the victim, and told the victim to dry the rest, so the victim was not wet, that she observed Defendant get the clothes for the victim from his closet, and that the victim was violently sick, was carried to the bed, and was asleep or lying still, not rolling around. The victim testified that she bathed in the guest bathroom, not Defendant's bathroom where Defendant's towels would be, and did not notice anything unusual about the clothes she put on. Presumably, the victim or Ms. Olsen would have noticed if the clothing or towel given to them by Defendant were as dirty as they would be if soiled with semen. The victim further testified that she was trying to sleep and still feeling sick, when Defendant entered the room five or six times to molest her. Thus, there was sufficient evidence for the jury to find that Defendant's semen found on the victim's genitals was due to Defendant's molestation of the victim, not due to an accidental transfer of that semen from allegedly soiled towel, clothing, or bed sheet. Defendant has failed to allege any facts that, if true, satisfy either prong of <u>Strickland</u>.

(P.C.O. at 7-8) (internal citation to the record omitted). Florida's Second District Court of Appeal *per curiam* affirmed the post-conviction court's denial of this claim. (Ex. 11). The record supports the state courts' conclusions.

In the plea bargain context, "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused[.]" Missouri v. Frye, 132 S. Ct. 1399, 1408 (2012). A defense counsel's failure to communicate formal plea offers to a defendant would constitute deficient performance under the first part of the Strickland test. Id. at 1408. To demonstrate prejudice under the second part of the Strickland test where a plea offer has lapsed or been rejected due to counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel. Id. On the record before this Court, Petitioner cannot demonstrate Strickland prejudice.

Given Petitioner's awareness of the state's plea offer, "his after the fact testimony concerning his desire to plead, without more, is insufficient to establish that but for counsel's alleged advice or inaction, he would have accepted the plea offer." Diaz v. United States, 930 F.2d 832, 835 (11th Cir. 1991). Other than asserting that he would have accepted a guilty plea had he realized that Olsen and an expert on semen transference would not testify,

Petitioner only speculates as to the testimony Olsen or the expert would have offered, and argues that counsel was ineffective for failing to secure these witness' testimony.  In addition, at his sentencing hearing, Petitioner protested his innocence and claimed that he believed his behavior should have resulted in only a lesser charge and a sentence of probation (S.H. at 18, 20).  While Petitioner's denial of guilt is not dispositive on the question of whether he would have accepted either of the state's plea offers, it is nonetheless a relevant consideration. Osley v. United States, 751 F.3d 1214, 1224-25 (11th Cir. 2014)("Osley's insistence on his innocence, both before and after trial, makes it more difficult to accept his claim that he would have taken a fifteen-year plea deal."). Petitioner's insistence on his innocence and his claim that he believed his prior counsel would have been able to get the state to reduce the charge to battery, undermines his current assertion that he only agreed to go to trial because he believed Olsen and a semen transference expert would testify.  There is no evidence before this Court to show that Petitioner's decision to go to trial or take a plea offer would be different had he received different advice from counsel.

The state court did not unreasonably conclude that the record contradicted Petitioner's assertion that he was prejudiced by counsel's deficient performance at the plea-bargaining stage. Affording AEDPA deference to the state court's findings, Claim

Three must be denied. See Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004) ("In addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference – this one to a state court's decision – when we are considering whether to grant federal habeas relief from a state court's decision.").

**C.   Claim Four**

Petitioner asserts that trial counsel was ineffective for failing to call Carolyn Olsen to testify at trial (Doc. 1 at 11). Petitioner asserts that:

> Ms. Olsen's testimony was critical to Petitioner, in order to establish that the allegations did not occur and that the fluid and DNA the state relied upon as evidence was accidentally transferred to the alleged victim by her wearing Petitioner's dirty and soiled boxer shorts.

(Doc. 1 at 11).  Petitioner raised this claim in his Rule 3.850 motion, and it was rejected by the post-conviction court as follows:

> As to Ground 2, Defendant argues counsel was ineffective for failing to call Carolyn Olsen to testify as a witness. Defendant believes Ms. Olsen would have testified that the victim was still wet when she dressed, that the clothes given to the victim by Defendant were not clean, and that she never observed any sexual activity. The record reflects that Ms. Olsen was listed as a State witness. A copy of the witness list is attached. The State did not call her at trial. Trial counsel referred to Ms. Olsen throughout his opening statement, clearly believing she would be called by the

State. Regardless of whether trial counsel was deficient in failing to separately subpoena Ms. Olsen as a defense witness, Defendant cannot prove prejudice. Defendant mischaracterizes how Ms. Olsen would testify. Ms. Olsen gave a statement to police, and was deposed. In her statement to police on the day of the offense, Ms. Olsen said she checked on the victim, that Defendant checked on the victim two or three times, and that she had no idea any sexual activity occurred while she slept, blaming it on Darvocet. Ms. Olsen maintained her story even when the officer stated it was implausible and threatened her with arrest. A copy of the statement is attached.

In her deposition, Ms. Olsen indicated there was a discussion in which Defendant reaffirmed that the victim was too young to be promiscuous. Ms. Olsen stated that Defendant gave her clothes for the victim to wear after her bath, and that she guessed he got them from his closet. Ms. Olsen never stated that the clothes or towel the Defendant gave her for the victim were not clean. Ms. Olsen never stated that the victim was still wet, only that she helped dry the victim's arms and legs, and let the victim dry the rest of herself. Once the victim was put to bed, Ms. Olsen checked on her three or four times. On one occasion when she got up to check on the victim, she ran into the sliding glass door, and when Defendant asked if she was okay, she knew he was in the bedroom where the victim was. Ms. Olsen testified that she initially laid down next to the victim, but got up to check on her cat, and when she came back, the Defendant pulled her down so he was between her and the victim. She did not testify that she did not observe any sexual activity, rather, she testified that she passed out until the victim woke her the next morning. When she asked the victim what was wrong and if Defendant touched her, the victim responded "He did a lot more than that." The Court notes that Ms. Olsen's statement and deposition are

> consistent with the victim's statement to
> child protection, deposition, and trial
> testimony. The failure to call witnesses can
> constitute ineffective assistance of counsel
> if the witnesses may have been able to cast
> doubt on the defendant's guilt. *Bulley v.*
> *State*, 900 So. 2d 596 (Fla. 2d DCA 2004),
> *citing* Sorgman v. State, 549 So. 2d 686, 687
> (Fla. 1st DCA 1989). Here, Ms. Olsen's
> testimony would not have been able to cast
> doubt on Defendant's guilt, since her
> testimony did not, as Defendant alleges,
> contradict the victim's testimony in any
> significant way. There is no reasonable
> probability of a different outcome had counsel
> issued a separate subpoena for Ms. Olsen and
> called her at trial. Defendant has failed to
> allege any facts that, if true, satisfy either
> prong of Strickland. Therefore, Ground 2 is
> DENIED.

(P.C.O. at 5-6) (internal citation to the record omitted).

Florida's Second District Court of Appeal *per curiam* affirmed (Ex.

11). A review of the record supports the state court's conclusion

that Petitioner cannot demonstrate prejudice from this witness'

failure to testify.

Petitioner asserts that Olsen's testimony would have

supported his argument that his semen was on the victim's vagina

because the victim used a soiled towel to dry herself after a bath

and wore Petitioner's soiled underpants (Doc. 1 at 11). A review

of Olsen's statement to the police and her pre-trial deposition

does not show that she ever testified that the towel or underpants

given to the victim had semen on them or were otherwise soiled.

Petitioner asserts that Olsen would have testified that the victim

was still wet when she put on Petitioner's clothing. Id.  However, at no time did Olsen state that the victim was wet when she put on Petitioner's clothing; only that *she* did not dry the victim. Petitioner asserts that Olsen would have testified that he went into the room where the victim was sleeping on fewer occasions than the victim testified. Id. Indeed, the victim testified that Petitioner entered her room and committed sexual acts on her six different times, including at least once while Olsen was passed out on the same bed (T. at 203).  Olsen told the police that Petitioner had "checked" on the victim "[t]wice or three times." (Ex. 9 at 699, Police Report, Carolyn Olsen). However, Olsen also told the police that she missed some of what was happening around her because she had been drinking and taking Darvocet. Id. at 702. In her deposition, Olsen testified that after "maybe 11:30" she "konked out" on the bed beside the victim and did not remember anything until the victim woke her the next morning (Ex. 9 at 588, Deposition, Carolyn Olsen).  That Olsen did not hear Petitioner's lewd and lascivious behavior with the victim does not indicate that the activity did not occur.

The post-conviction court did not unreasonably conclude that, even had Olsen testified, the slight discrepancy between Olsen's testimony and the victim's testimony regarding the number of times Olsen remembered Petitioner going to the victim's room, does not demonstrate a reasonable probability of a different outcome had

she testified.[5]   Because Petitioner cannot demonstrate <u>Strickland</u> prejudice, Claim Four is denied pursuant to 28 U.S.C. § 2254(d).

   **D.   Claim Five**

   Petitioner asserts that trial counsel was ineffective for failing to call an expert witness to testify that his semen could have been, and was actually, transferred to the victim's vagina through his dirty boxer shorts (Doc. 1 at 13).

   Petitioner raised this claim in his Rule 3.850 motion, and the post-conviction court denied the claim on the ground that Petitioner could not demonstrate prejudice because the evidence presented at trial did not support a conclusion that the victim had "rolled around" in Petitioner's bed such that her genitals were in contact with his semen or that the boxer shorts he gave her to wear after her bath were soiled with his semen (P.C.O. at 14-15); <u>see also</u> discussion <u>supra</u> Claim Three, Part III(B). Florida's Second District Court of Appeal affirmed the post-conviction court's rejection of this claim (Ex. 11).   The record supports the state courts' rejection of this claim.

   The state called as a witness the nurse who examined the victim the day after the sexual activity occurred.   The nurse testified that the victim told her that Petitioner ejaculated on her and the sperm went on her genital area (T. at 248).   The victim

---

   [5] Notably, as argued by Respondent, Petitioner was found guilty of only one instance of penetration (Doc. 29 at 27).

told her that Petitioner "used his fingers to rub it in, and then he took some on his fingers and inserted his fingers into her vagina." Id.  As a result of what the victim told her, the nurse took swabs of the victim's labia and rectum. Id. at 249.  The swabs were analyzed.  Semen was found on the labia swab while seminal fluid was found on the rectum swab. Id. at 305.  The semen was identified as Petitioner's. Id. at 307.  On cross examination, trial counsel was able to elicit testimony from both the examining nurse and the state's DNA expert that it was possible for bodily fluids to transfer from one surface to another. Id. at 266, 317.

"Where ineffective assistance is based on counsel's failure to call a witness, the burden to show prejudice is heavy because 'often allegations of what a witness would have testified to are largely speculative.'" Holt v. Sec'y, Fla. Dep't of Corr., 489 F. App'x 336, *2 (11th Cir. 2012) (quoting Sullivan v. DeLoach, 459 F.3d 1097, 1109 (11th Cir. 2006)).  Petitioner argues that he was prejudiced because an expert witness could have testified that his semen got on the victim through transference.  It is speculative that an expert witness would in fact have testified that the fluids found on the victim were not placed there as described by the victim, but were instead transferred to the victim due to the victim's contact with Petitioner's dirty bedding or boxer shorts. Self-serving speculation as to the testimony an expert witness might have provided fails to provide a basis on which to conclude

that a defendant's trial attorney performed deficiently. A petitioner must present evidence of the witness testimony in the form of actual testimony or an affidavit. See United States v. Ashimi, 932 F.2d 643, 650 (7th Cir. 1991). Petitioner has provided no evidence that a semen transference expert exists and that such an expert would have testified as Petitioner speculates.

Petitioner has not shown that the outcome at trial would have differed had an expert witness been found to testify that the semen and seminal fluid found on the victim could have been transferred there in a method different than testified to by the victim. The state court's rejection of this claim was not contrary to Strickland and was not based upon an unreasonable determination of the facts. Claim Five is denied pursuant to 28 U.S.C. § 2254(d).

**E.   Claim Six**

Petitioner asserts that counsel was ineffective for failing to investigate "the previous rape allegations/incidents involving the alleged victim[.]" (Doc. 1 at 15). Petitioner states that counsel told him that "he was going to investigate the previous rape allegations/incidents involving [the victim] and that he was going to cross-examine [the victim] about these allegations in order to established [sic] her motive for fabricating these allegations[.]" Id.

Petitioner raised this claim in his Rule 3.850 motion where it was denied by the post-conviction court on several grounds

including the ground that the record refuted any allegation that the victim had a motive to lie in order to gain attention from her mother (the motive alleged by Petitioner).  The post-conviction court also concluded that:

> Evidence of a victim's prior sexual encounters are inadmissible, except, when established in camera, to prove the defendant was not the source of the semen or injury, or that such evidence tends to establish a pattern of conduct or behavior on the part of the victim which is so similar to the conduct or behavior in the case that it is relevant to the issue of consent. Fla. Stat. §794.022; See also Lee v. State, 899 So. 2d 348 (Fla. 2d DCA 2005); Carlyle v. State, 945 So. 2d 540, 546 (Fla. 2d DCA 2006); Hogan v. State, 908 So. 2d 498 (Fla. 5th DCA 2005). Here, there is no dispute Defendant's semen was found on the victim, so identity is not an issue. Further, there was no consent defense.  That the prior rape allegations may be false is speculation on the part of Defendant. The only evidence of the prior rape allegations appears in the CPT report.  These allegations were not the subject of discovery by either party, there was no testimony that made the victim's history relevant. That Defendant argues this information was intended towards the victim's motive, not character, is irrelevant, in that motive is not one of the exceptions to inadmissibility.  Trial counsel cannot be found ineffective for failing to raise inadmissible evidence. Pietri v. State, 885 So. 2d 245, 252 (Fla. 2004). There is no reasonable probability that the trial court would have admitted evidence of the prior rape allegations even had counsel proffered the evidence, since the requirements for such admission had not, and could not, be met by counsel. Defendant has failed to allege any facts that, if true, satisfy either prong of Strickland. Therefore, Ground 6 is DENIED.

(P.C.O. at 12-13).   The post-conviction court's denial of this claim was affirmed by Florida's Second District Court of Appeal (Ex. 11).   Petitioner has not established entitlement to federal habeas relief on this claim.

During his cross examination of the witness, the trial court chastised defense counsel for insinuating that the victim may have consented to the sexual activity at issue (T. at 218-20).   In response, counsel argued that the victim "has accused two other people of false allegations of rape." Id. at 221.   The state objected to counsel's statement, arguing:

> One, there is absolutely not one shred of evidence she has falsely reported anything. Where the nurse does take your medical history:  Have you ever had – have you ever been raped before?  Had sexual intercourse before?  For the purposes of medical findings, yes.  She answered yes to two times, and yes, she had intercourse before.  So that part is true.
>
> The idea that any of these allegations would be false, there is not a single ounce of evidence to show that to be not only relevant or true, but there is also the Rape Shield Statute under 794.022 where the defendant may not introduce evidence of any other sexual activity by the victim unless it is to show the defendant is not the source of the semen, the pregnancy or disease.
>
> . . .
>
> So whether or not she has been a victim of a sex crime before is not relevant to this case at all.  I have not charged Mr. Sirias with sexual battery.  I charged him with lewd and lascivious battery, where consent is not an issue to the crime, nor have we made that

- 30 -

> allegation.   Nor has she ever said that she
> was threatened or harmed or there was bodily
> injury through these interactions.

(T. at 221-22).  As noted by defense counsel at trial, Petitioner

has not presented any evidence, other than his own bald assertions,

that the victim ever _falsely_ accused anyone of rape.  If the victim

had been raped on another occasion, such a fact would be irrelevant

to Petitioner's case.  Accordingly, he has not demonstrated how

he suffered prejudice from counsel's alleged failure to

investigate the victim's allegations.[6]  See Ross v. Estelle, 694

F.2d 1008, 1011-12 (5th Cir. 1983) (bald assertions are not of

probative evidentiary value); United States v. McFarlane, 881 F.

Supp. 562, 570 (M.D. Fla. 1995) ("Mere assertions or conclusory

allegations of ineffective assistance of counsel without factual

support are insufficient to sustain an effective assistance

claim.") (citing Wilson v. United States, 962 F.2d 996, 998 (11th

Cir. 1992)); Caderno v. United States, 256 F.3d 1213, 1217 (11th

Cir. 2001) (habeas relief is not warranted when claims are merely

conclusory allegations unsupported by specifics).

    Moreover, Petitioner's challenge to the state court's

application of Florida Statute § 794.022 fares no better (Doc. 22

at 44).  Indeed, as noted by Petitioner, it does not appear that

---

[6] From the trial transcript, it is clear that counsel was
aware of the prior allegations.  Petitioner does not explain why
he believes that counsel did not investigate such.

Florida's rape shield statute, § 794.022, necessarily applies to prosecutions for lewd or lascivious battery, the crime for which Petitioner was charged and convicted. Cooper v. State, 137 So. 3d (Fla. 4th DCA 2014).  However, the appellate court affirmed the post-conviction court's denial of this claim.  Both the state post-conviction court in rejecting Petitioner's claim and the state district court of appeal, in affirming that rejection, has answered the question of what would have happened had counsel sought to introduce the victim's sexual history at the trial. See Herring v. Sec'y, Dep't of Corr., 397 F.3d 1338, 1354-55 (11th Cir. 2005) ("The Florida Supreme Court already has told us how the issues would have been resolved under state law had [petitioner's counsel] done what [petitioner] argues he should have done.... It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'").  Accordingly, Petitioner cannot demonstrate prejudice from counsel's failure to argue that the victim's prior sexual history was not shielded by § 794.022.

Petitioner fails to establish that the state post-conviction court either unreasonably applied Strickland or unreasonably determined the facts in rejecting this claim of ineffective assistance of counsel. Claim Six is denied.

**F.    Claim Seven**

Petitioner asserts that trial counsel was ineffective for advising him against testifying at trial (Doc. 1 at 17). Petitioner states that, had he testified, he would have denied sexual activity with the victim; testified that the clothing the victim wore after her bath had been recently worn by him; and that the semen on the victim must have come from Petitioner's dirty boxer shorts. Id. Petitioner raised this claim in his Rule 3.850 motion, and it was denied by the post-conviction court:

> Defendant argues that counsel was ineffective for misadvising Defendant not to testify. Defendant contends that he wanted to testify, and that he was a mortgage broker, intelligent and articulate, with no prior record, so he would have been a good witness. While Defendant states that counsel's advice not to testify was unreasonable, he fails to state what that advice was, or why that advice was unreasonable. The record indicates that the Court advised Defendant of his right to testify twice, and that Defendant stated he understood that the decision was his choice alone. Neither time did Defendant indicate he wished to testify. Thus, the record appears to show that Defendant voluntarily agreed with the advice of trial counsel not to testify. Defendant did not allege any affirmative misadvice, coercion, or threats to withdraw on the part of counsel. See, e.g. Farnbaugh v. State, 778 So. 2d 369 (Fla. 2d DCA 2001). Defendant has alleged no facts that would show that counsel's advice was deficient because no reasonable attorney would have advised him not to testify. Simon v. State, 47 So. 3d 883 (Fla. 3d DCA 2010), quoting Lott v. State, 931 So. 2d 807, 819 (Fla. 2006). Even if counsel's performance was in some way deficient on this issue, there is no reasonable probability that

> Defendant's testimony denying that anything happened would have changed the outcome, as there was sufficient other evidence for the jury to find Defendant guilty. Defendant has failed to allege any facts that, if true, satisfy either prong of *Strickland*.

(P.C.O. at 17-18) (internal citations to the record omitted). Florida's Second District Court of Appeal affirmed the denial of this claim (Ex. 11).  The record supports the state courts' conclusions.

A defendant's right to testify at a criminal trial is a fundamental and personal right which cannot be waived by defense counsel. See United States v. Teague, 953 F.2d 1525, 1532 (11th Cir. 1992).  In Teague, the Eleventh Circuit held that it is defense counsel's responsibility to advise the defendant of this right and the strategic implications and "that the appropriate vehicle for claims that the defendant's right to testify was violated by defense counsel is a claim of ineffective assistance [under Strickland]." Id. at 1534.  The Teague court reasoned that an attorney's performance would be deficient under the first prong of the Strickland test if counsel refused to accept the defendant's decision to testify and would not call him to the stand or, alternatively, if defense counsel never informed the defendant of the right to testify and that the ultimate decision belonged to the defendant. Id. In Teague, the defendant's ineffective assistance of counsel claim was rejected because the trial court found that counsel had advised the defendant of his right to

testify, had advised him that he should not exercise that right, and the defendant did not protest. Teague, 953 F.2d at 1535.

Before trial, the trial court advised Petitioner that he had a right to testify on his own behalf and that the decision to do so was "entirely" up to him (T. at 5).  At the end of the state's case, after discussing the matter with Petitioner, defense counsel informed the court that Petitioner would not testify. Id. at 322-324.  The Court advised:

> Mr. Sirias, you understand that you have a right to testify in your own behalf, if you choose to do so.  You also have a right to remain silent.  Your decision is solely yours, and yours alone.  Your attorney can advise you and recommend, but ultimately you must make the decision and live with the result.

(T. at 325). Petitioner affirmed that he understood. Id.

The record shows that Petitioner was well aware of his right to testify, that he and defense counsel discussed it, that defense counsel advised Petitioner not to testify, and that Petitioner agreed with his attorney's recommendation. Indeed, Petitioner acknowledged that it was his decision not to testify (T. at 324). There is no evidence that defense counsel refused to accept Petitioner's decision to testify or failed to advise him of his right to testify.  Accordingly, Petitioner has not shown that counsel's performance was deficient in this respect.

The state court did not unreasonably conclude that this claim fails to satisfy either prong of Strickland.[7] Accordingly, Claim Seven is denied. 28 U.S.C. § 2254(d).

### G. Claim Eight

Petitioner asserts that trial counsel was ineffective for allowing a biased juror to serve at his trial (Doc. 1 at 19). Specifically, Petitioner claims that "[Juror] Koch's express statement that he would testify if he was charged with a crime, demonstrated that Mr. Koch was biased and that he would not be able to apply the presumption of innocence and therefore hold it against Petitioner if he did not testify." Id.

The post-conviction court denied the claim on the ground that Petitioner had not demonstrated that a biased juror actually served on his jury (P.C.O. at 2-5), noting that "[w]hen trial counsel asked the panel if they would infer guilt if Defendant did not testify, no one agreed." Id. Moreover, "[w]hile Mr. Koch did not specifically state he could be fair and impartial, none of his statements indicate bias apparent on the face of the record[.]" Id. at 4. Florida's Second District Court of Appeal affirmed the

---

[7] Because Petitioner fails to show his counsel's performance was deficient, the Court does not need to address the prejudice component of the Strickland test. Sims v. Singletary, 155 F.3d 1297, 1305 (11th Cir. 1998). However, in light of the substantial evidence against him, Petitioner's proposed testimony (see Doc. 1 at 18) would not have refuted the overwhelming evidence of his guilt.

post-conviction court's denial of this claim (Ex. 11).  The record supports the state courts' denial of this claim.

The Sixth Amendment guarantees the accused a trial by an impartial jury in federal criminal prosecutions. U.S. Const. amend VI.  Because "trial by jury in criminal cases is fundamental to the American scheme of justice," the Due Process Clause of the Fourteenth Amendment guarantees the same right to the accused in state criminal prosecutions. Duncan v. Louisiana, 391 U.S. 145, 149 (1968).  As with federal law, the test for determining juror competency in the Florida courts is "whether the juror can lay aside any bias or prejudice and render his verdict solely upon the evidence presented and the instructions on the law given to him by the court." Lusk v. State, 446 So.2d 1038, 1041 (Fla. 1984).

The Eleventh Circuit has cautioned that courts applying Strickland must "defer to trial counsel's performance and eschew the distorting effects of hindsight" when interpreting a prospective juror's statements and trial counsel's decision whether or not to leave that person on the jury. Harvey v. Warden, Union Correctional Institution, 629 F.3d 1228, 1247 (11th Cir. 2011); see also Babb v. Crosby, 197 F. App'x 885, 887 (11th Cir. 2006) ("the Supreme Court has not concluded that a lawyer who leaves an arguably biased juror on a jury is per se ineffective").  Moreover, "[a]ssessing jurors during voir dire also requires an evaluation of demeanor and credibility.  Review of counsel's

performance is highly deferential in any case, but the case for deference is even greater when counsel is evaluating credibility." Bell v. United States, 351 F. App'x 357, 360 (11th Cir. 2009). (internal citation omitted).

Petitioner has adduced no evidence other than the transcript of the jury selection proceeding to support his claim that trial counsel had a reasonable basis for striking Koch from the jury pool. During voir dire, defense counsel asked the jury:

> COUNSEL: Two other quick factors. Is anybody going to say, "We want Mr. Sirias to testify at trial because, if he doesn't, he's guilty. Nobody – if I was accused of a crime, and I didn't do it, I would testify." Nobody believes that"
>
> Come on, you're shaking your head, Mr. Koch.
>
> KOCH: I would testify.
>
> COUNSEL: You understand that, as lawyers, we're trained in the rules of evidence, and there are certain strategic decisions we make in the case; correct? As well as a whole host of other reasons. Remember, the judge told you the State has the exclusive burden of proof; correct? We don't have to do anything. So is anybody going to hold it against Mr. Sirias if he doesn't testify?
>
> Nobody?
>
> . . .
>
> Does everybody understand that if I make the legal determination, and advise my client accordingly, that

> the State didn't prove their case,
> we don't have to do anything? And
> conversely, if I want to put my
> client on the stand and get some
> information out that I feel is
> important to his Defense, then we'll
> put him on the stand. But that has
> nothing to do with guilt or
> innocence. Does everybody
> understand that?
>
> Judge Reese is going to tell you he
> has a constitutional right to remain
> silent. And I want to make sure
> nobody is going to infer guilt from
> that. Is that fair? Again,
> following the rules.

(T. at 89-90). Despite counsel's prodding, at no point in the proceedings did Juror Koch, or any other juror, indicate that he or she believed a defendant's failure to testify should be counted against him. Rather, Juror Koch merely stated that if he were accused of a crime, he (Koch) would testify at trial. Petitioner has not shown that no competent counsel would have failed to use a peremptory challenge to strike Koch from the jury panel. See Chandler v. United States, 218 F.3d 1305, 1314-15 (11th Cir. 2000)("[B]ecause counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take.").

Moreover, even if Koch's *voir dire* statement could be construed as an indication that he might not be impartial, a habeas petitioner who challenges the impartiality of a juror after the

verdict is returned in his state-court trial "is entitled to habeas relief only upon a showing that the juror was actually biased or incompetent." Rogers v. McMullen, 673 F.2d 1185, 1190 (11th Cir. 1982).   Petitioner has made no such showing, and the record does not support such a showing.   Thus, Petitioner cannot show that trial counsel performed deficiently, or that any deficient performance prejudiced his defense.

The state court's adjudication of this claim was neither contrary to Strickland nor based upon an unreasonable determination of the facts. Claim Eight is denied.

### H.   Claim Nine

Petitioner asserts that trial counsel was ineffective for failing to "properly" cross examine the witness (Doc. 1 at 20). Specifically, Petitioner alleges that counsel should have "meaningfully" impeached the victim about her motive to lie, her prior inconsistent statements, and her credibility as a witness. Id.   Petitioner asserts that counsel knew the victim to be a troubled teen who sought attention from her mother, that she was involved in prior rape allegations, that she had been sent to live with her grandmother, had received counseling and did poorly in school, had been held back a grade, and was furious with her mother for leaving her with Ms. Olsen. Id.

Petitioner raised this claim in his Rule 3.850 motion, and the post-conviction denied the claim, noting that counsel had

thoroughly cross-examined the victim and that "[t]he proposed testimony regarding the victim's behavior, character, or performance in school would not have served to discredit the victim, since they would not point out any bias, corruption, or lack of competency on the part of the victim." Id.  The court also noted that none of the information put forth by Petitioner related to the victim's reputation for truth, so it could not have been used to impeach her testimony. Id.  The court pointed out that "counsel conducted a lengthy cross-examination of the victim, and impeached her with prior inconsistent testimony several times." Id. (citing T. at 182, 185, 189, 214, 226).  Finally, the court concluded:

> The substantive nature of Defendant's acts remain the same in the victim's statement, deposition, and testimony.  Only minor details changed in the victim's story between the date of the offense and the trial. Further, some of the information Defendant believes counsel should have impeached the victim on, such as that Defendant also touched her breasts, that he attempted anal sex, or that he may have performed oral sex on the victim more times, would have been more harmful to Defendant than the possible impeachment would have been helpful. Counsel cannot be deemed ineffective for failing to present evidence that would open the door to damaging cross examination and rebuttal evidence that would counter any value that might be gained from the evidence.

Id.  Florida's Second District Court of Appeal *per curiam* affirmed (Ex. 11). Any claim by Petitioner that the state court unreasonably adjudicated this claim is refuted by the record.

What to ask a witness on cross examination is a question of trial strategy. See Gonzalez v. United States, 553 U.S. 242, 249 (2008) ("Numerous choices affecting conduct of the trial, including the objections to make, the witnesses to call, and the arguments to advance, depend not only upon what is permissible under the rules of evidence and procedure but also upon tactical considerations of the moment and the larger strategic plan for the trial."). Tactical decisions such as what questions to ask witnesses are "virtually unchallengeable." Powell v. Kelly, 562 F.3d 656, 670 (4th Cir. 2009). Defense counsel extensively cross examined the victim (T. at 178-231). Counsel questioned the victim about her inconsistent testimony regarding whether Ms. Olsen knew Petitioner prior to the night in question; the amount of alcohol the victim had consumed; the amount of alcohol Petitioner had consumed; whether or not she could actually remember the night in question; the number of times she had told investigators Petitioner entered the bedroom while she was in Petitioner's bed; and whether Petitioner and Ms. Olsen were sexually involved. Id. at 182-227. That Petitioner has now combed through the record to find additional instances of minor

inconsistencies in the victim's testimony does not show deficient performance by counsel.

While the Court declines to speculate as to the underlying reasons behind counsel's tactical decisions, as noted by the post-conviction court, some of the alleged inconsistencies (i.e. whether Petitioner also touched the victim's breast) were potentially harmful to his case.   Moreover, aggressive cross-examination of a very young witness could have the unwelcome effect of eliciting sympathy for the victim.   It would be sound trial strategy to let a child-witness' testimony stand on its own instead of introducing prior statements that, although inconsistent in minor respects, affirmed the pivotal allegation that Petitioner had engaged in sexual activity with a child.   Because there were sufficient strategic reasons for counsel to forego a more aggressive cross-examination of the victim, Petitioner cannot satisfy Strickland's performance prong, and he is not entitled to federal habeas relief on Claim Nine.   See Castillo v. Sec'y, Fla. Dep't of Corr.,722 F.3d 1281, 1285 n. 2 (11th Cir. 2013)("The relevant question under Strickland's performance prong, which calls for an objective inquiry, is whether any reasonable lawyer could have elected not to object for strategic or tactical reasons, even if the actual defense counsel was not subjectively motivated by those reasons.").

I.    **Claim Ten**

Petitioner asserts that defense counsel was ineffective for eliciting damaging opinion testimony from Nurse Practitioner Susan Sherman ("Sherman") (Doc. 1 at 22). Specifically, Petitioner directs the Court to a portion of the trial transcript in which counsel asked Sherman whether sperm could stay on clothing "for quite a period of time." (T. at 271). The state objected to the question as beyond the scope of Sherman's expertise. Id.  The objection was sustained. Id. Petitioner then argues that, "[a]lthough Trial Counsel was ultimately able to have Nurse Sherman change her opinion as to whether the evidence was in fact inconsistent and inconclusive, this was irrelevant because of her prior testimony which was damaging and prejudicial to Petitioner, as Nurse Sherman's testimony was inadmissible because she had not been offered as an expert witness to give her opinion." (Doc. 1 at 23).

Petitioner raised this claim in his Rule 3.850 petition where it was denied by the post-conviction court (P.C.O. at 13-14). The post-conviction court determined that Petitioner sought to argue that counsel was ineffective for eliciting damaging testimony because Sherman affirmed that the DNA evidence was consistent with the victim's allegations and stated that she had never encountered a case where semen was deposited on a victim by the type of transference urged by Petitioner. Id.  The post-conviction court noted that, under Florida law, a witness need not be formally proffered as an expert to offer this type of opinion so long as the witness' background

qualified him as an expert and such qualification was elicited at trial (which Sherman's was). Id.   The post-conviction court further found that counsel's performance in questioning Sherman was not deficient:

> Counsel elicited from Mrs. Sherman that she could not tell how the semen was deposited on the victim. Further, counsel elicited from Mrs. Sherman that her findings did not confirm or deny the victim's allegations. That Defendant does not like the witness' answer to the question regarding his "accidental transfer theory" does not render counsel's performance deficient. Since the witness ultimately concluded that, while the finding of semen was consistent with the victim's allegations against Defendant, the examination did not confirm or deny those allegations, there is no prejudice to Defendant. Any questions by counsel to the witness regarding the examination of the victim would have opened the door in some fashion for the State's questions on redirect. The only way counsel could have avoided opening the door for the State's questions would have been to not ask any questions of the witness at all. Defendant has failed to allege any facts that, if true, satisfy either prong of Strickland.

Id. (internal citations to the record omitted).   Florida's Second District Court of Appeal affirmed the post-conviction court's denial of this claim (Ex. 11).

To the extent that Petitioner now argues the state court unreasonably concluded that Florida law allowed Sherman's testimony without a formal proffer as an expert witness, the claim fails. Habeas relief does not lie for errors of state evidentiary law. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[I]t is not the

province of a federal habeas court to reexamine state-court determinations on state-law questions."). To the extent Petitioner argues that counsel was ineffective because he did not like the substance of Sherman's testimony, such a claim lacks merit. Although Sherman did indeed testify unfavorably, counsel was able to minimize the effect of the damaging testimony by having her admit that her findings neither confirmed nor negated the victim's allegations of sexual assault (T. at 273).

The state court did not unreasonably conclude that Petitioner did not demonstrate deficient performance. Claim Ten is denied pursuant to 28 U.S.C. § 2254(d).

### J.   Claim Eleven

Petitioner asserts that defense counsel was ineffective for failing to object to the prosecutor's closing argument and to the jury instruction "both [of] which allowed Petitioner to be convicted under the uncharged theory of 'union' under sexual activity." (Doc. 1 at 24).[8]

Petitioner raised this claim in his Rule 3.850 motion, and the post-conviction court denied the claim on the ground that the testimony of the victim provided sufficient evidence that both union and penetration had occurred (P.C.O. at 18-19). The court also found

---

[8] Petitioner also argues that the trial court read 2007 jury instructions to the jury instead of the 2005 instruction, which resulted in "a Constitutional prohibition against Ex Post Facto Laws" because he committed the instant crime in 2005, not 2007 Doc. 1 at 24-25). This argument is addressed in Claim Seventeen. See discussion infra Part III(N).

that, because the jury made a specific finding of penetration, "the
record refutes Defendant's claim that [it] rendered a general
verdict." Id. at 19. Florida's Second District Court of Appeal
affirmed the post-conviction court's denial of this claim. (Ex. 11).
The record supports the state courts' rejection of this claim.

Petitioner's information asserted that Petitioner:

> On or About December 30, 3005 in Lee County,
> Florida, did unlawfully encourage, force, or
> entice a person B.E. 12 years of age or older
> but less than 16 years of age to engage in any
> act involving sexual activity, by placing his
> penis and/or tongue and/or fingers in the
> victim's vagina and/or anus, contrary to
> Florida Statute 800.04(4)(b).

(Ex. 1, Vol. II at 6). "Sexual Activity" is defined as "oral, anal,
or vaginal penetration by, **or union with**, the sexual organ of another
or the anal or vaginal penetration of another by any other object[.]"
Fla. Stat. § 800.04(1)(a) (emphasis added). During trial, evidence
was presented that Petitioner used his fingers to digitally penetrate
the victim; performed oral sex on the victim; used his penis to
penetrate the victim's anus; and attempted to use his penis to
penetrate the victim's vagina (T. at 148-49, 152-61, 161-62, 162,
163).

The prosecutor argued during closing that Petitioner had "sexual
activity" with the victim (T. at 399). In its jury charge, the trial
court's definition of "sexual activity" included the "or union with"
verbiage of § 800.04(1)(a). Id. at 403. Presumably, Petitioner now
complains that the jury's guilty verdict could have been based solely

upon the jury's finding that his penis had "union with" (rather than "penetration of") the victim's vagina, which was not charged in the information.   Indeed, in Eaton v. State, 908 So. 2d 1164 (Fla. 1st DCA 2005), Florida's First District Court of Appeal held that the trial court committed fundamental error by instructing the jury on the uncharged alternative theory of sexual union because it was impossible to determine from the jury's general verdict whether the defendant was convicted based on the charged theory of sexual penetration or the uncharged theory of sexual union. See also Sanders v. State, 959 So. 2d 1232, 1234 (Fla. 2d DCA 2007) ("it is fundamental error to instruct the jury on an uncharged alternate theory of a particular offense when it is impossible to ascertain whether the jury convicted the defendant of the uncharged theory rather than the charged theory."). However, in Eaton, the jury did not specify which theory upon which it based its verdict, returning instead only a general verdict of guilty, making it impossible to determine whether Eaton had been convicted of a charged or uncharged offense. Id. at 1165.   In Ross v. State, the same court clarified that no fundamental error occurs from the inclusion of the "union with" language when it is clear that the jury did not convict on the uncharged theory of sexual union. 31 So. 3d 858 (Fla. 1st DCA 2010).

In the instant case, the jury did not return a general verdict; instead, the jury specifically found that penetration had occurred (T. at 418).   Accordingly, the state post-conviction court did not unreasonably conclude that Petitioner could not demonstrate

_Strickland_ prejudice because it was clear that his conviction was not based on the uncharged theory of sexual union. _See_ _Olivera v. State_, 58 So. 3d 352 (Fla. 1st DCA 2011) (fundamental error occurs "[o]nly when there is reason to believe the conviction is for an offense not charged, as when the jury's verdict _specifically_ convicts the defendant of the uncharged form of the offense[.]"). Petitioner is not entitled to federal habeas relief on Claim Eleven.

**K.   Claims Twelve and Thirteen**

In Claim Twelve Petitioner asserts that defense counsel was ineffective for failing to move to dismiss the information because it included the phrase "and/or" which "made the information unconstitutionally vague, misleading, and confusing." (Doc. 1 at 26).   In Claim Thirteen, Petitioner argues that counsel was ineffective for failing to dismiss the information because it charged "multiple acts within a single count by using the phrase 'and/or', thereby allowing the jury to convict the petitioner without rendering a unanimous verdict." _Id._ at 28.

Petitioner raised these claims in his Rule 3.850 motion, and the post-conviction court denied relief (P.C.O. at 20-21).   In denying Claim Twelve, the court ruled that the information was not "so vague, indistinct or indefinite that the defendant was misled." _Id._ at 20 (citing _Delgado v. State_, 43 So. 3d 132, 133, 135 (Fla. 3d DCA 2010)).   The post-conviction court noted that the information tracked the language of Florida Statute § 800.04;

Petitioner was not misled as to the charges against him; Petitioner was not embarrassed in preparing his defense; and Petitioner received a fair trial.  The court also noted that Florida Rule of Criminal Procedure 3.140(k)(5) permits disjunctive or alternative allegations for an offense that may be committed by one or more of several means or acts.  Id. (citing Saldana v. State, 980 So. 2d 1220, 1221-22 (Fla. 2d DCA 2008)).

The post-conviction court rejected Claim Thirteen as merely speculative because Petitioner presented nothing to suggest that the jury's verdict was not unanimous (P.C.O. at 21).  Notably, the court concluded that "the jury's verdict was unanimous as to at least one specific act, as it specifically found penetration had occurred." Id.  Florida's Second District Court of Appeal affirmed the post-conviction court's rejection of these claims (Ex. 11).  The record and applicable state law support the state courts' conclusions.

Florida law specifically allows an information to allege in the disjunctive or alternative an offense that may be committed by doing one or more of several acts. Fla. R. Crim. P. 3.140(k)(5).[9]

---

[9] Rule 3.140(k)(5) states:

> For an offense that may be committed by doing
> 1 or more of several acts, or by 1 or more of
> several means, or with 1 or more of several
> intents or results, it is permissible to

Accordingly, counsel was not ineffective for failing to object to the information's use of "and/or" because such an objection would have been futile.   Likewise, Florida law permits the state to charge a defendant in child sex abuse cases by grouping multiple offenses together into a single count.  See Whittingham v. State, 974 So. 2d 616, 618-19 (Fla. 4th DCA 2008) ("[T]he state may charge a defendant in child sexual abuse cases in a manner not permitted in other types of criminal cases, expanding time periods for the commission   of   offenses   and   grouping   types   of   offenses together[.]");  State v. Generazio, 691 So. 2d 609, 611 (Fla. 4th DCA 1997).   The Whittingham court recognized that charging all the same type of acts within a single count "actually lessens the potential penalty to the defendant.   Where each charge is discrete and charged as such, the defendant is subject to substantially greater penalties and potential consecutive sentencing on each charge."  Id. at 619.

Given that it was not improper for the state to charge Petitioner with one count of lewd and lascivious molestation based upon his multiple actions over one night, and given the possibility of multiple charges had counsel objected to the single charge,

---

allege in the disjunctive or alternative such acts, means, intents, or results.

Fla. R. Crim. P. 3.140(k)(5).

defense counsel's performance was not deficient for failing to object to the information.

The state court's adjudication of Claims Twelve and Thirteen was neither contrary to Strickland nor based upon an unreasonable determination of the facts.  These claims are denied.

### L.   Claim Fifteen

Petitioner asserts that trial counsel was ineffective at the sentencing hearing because he failed to object to the prosecutor's argument that Petitioner was not remorseful for his actions which resulted in the imposition of a harsher sentence upon Petitioner (Doc. 1 at 32).  Petitioner asserts that counsel's failure to object "could have also affected the imposition of a harsher sentence upon Petitioner." Id.

Petitioner raised this claim in his Rule 3.850 motion, and the post-conviction court, while acknowledging that the victim's relatives and the state made references to Petitioner's lack of remorse, rejected the assertion that the court must have considered these factors at sentencing (P.C.O. at 23).  The court noted that Petitioner's allegation was "pure speculation" because "[t]he trial court made no reference to lack of remorse, or any other factors, when imposing the sentence.  There is no indication in this case that Defendant was additionally punished by the trial court for maintaining his innocence." Id. Florida's Second District Court of Appeal affirmed the post-conviction court's

denial of this claim (Ex. 11).   A review of the record supports the state court's findings.

A defendant's assertion of innocence and lack of remorse may not be used as factors to increase a defendant's sentence. Gage v. State, 147 So.3d 1020, 1022 (Fla. 2d DCA 2014).   At sentencing, the prosecutor argued:

> As we sit here today, Mr. Sirias is not remorseful for his actions, or at least from what he said, taking accountability for what he has done.  The jury did find him guilty of a second degree felony of lewd and lascivious battery on a 14 year old child.  He's not presented any issues for mitigation.  Being a good person, if that's the case, that's not what the state is here to present, one way or the other.  But that's not an element or mitigation or otherwise.

(S.H. at 22).  The state's argument does not appear to be made in support of a harsher sentence; rather, the argument was made to negate Petitioner's prior assertion that he was entitled to a reduction in sentence or other mitigation due to his good character (S.H. at 20).   Reasonable counsel could have concluded that because the state's comment was made in response to Petitioner's request for mitigation, he had no grounds on which to object to the comment. See Green v. State, 84 So.3d 1169, 1171 (Fla. 3d DCA 2012) ("[A] defendant's expression of remorse and acceptance of responsibility are appropriate factors for the court to consider in mitigation of a sentence...."); Godwin v. State 160 So. 3d 497 (Fla. 2d DCA 2015) (comments at sentencing made in connection with

rejection of an argument for mitigation do not violate due process); Shelton v. State, 59 So. 3d 248, 250 (Fla. 4th DCA 2011) ("We perceive the court's comments regarding the defendant's lack of remorse as the court's recognition that it lacked any grounds to mitigate his sentence. We see no evidence that the court used the defendant's lack of remorse against him.").

Moreover, Petitioner has presented no evidence that the sentencing court based its sentence on Petitioner's lack of remorse. The sentencing court did not mention Petitioner's lack of remorse, and any assertion that he would have receive a shorter sentence had counsel objected is purely speculative on Petitioner's part. See Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (explaining that a petitioner is not entitled to an evidentiary hearing or federal habeas relief on his ineffective-assistance-of-counsel claims where the claims are conclusory or wholly incredible). Petitioner thus failed to satisfy either prong of the Strickland standard. Claim Fifteen is denied pursuant to 28 U.S.C. § 2254(d).

**M.   Claim Sixteen**

Petitioner asserts that counsel's cumulative acts and omissions "rose to a level to the extent that Petitioner was not afforded effective assistance of counsel." (Doc. 1 at 34). Petitioner raised this claim in his Rule 3.850 motion, where it was rejected on the ground that none of Petitioner's individual

claims of ineffective assistance had merit (P.C.O. at 24). Florida's Second District Court of Appeal affirmed (Ex. 11).

This Court need not determine whether, under the current state of Supreme Court precedent, cumulative error claims reviewed through the lens of AEDPA can ever succeed in showing that the state court's adjudication on the merits was contrary to or an unreasonable application of clearly established federal law. Petitioner has not shown an error of constitutional dimension with respect to any federal habeas claim. Therefore, he cannot show that the cumulative effect of the alleged errors deprived him of fundamental fairness in the state criminal proceedings. See Morris v. Sec'y, Dep't of Corr., 677 F.3d 1117, 1132 (11th Cir. 2012) (refusing to decide whether post-AEDPA claims of cumulative error may ever succeed in showing that the state court's decision on the merits was contrary to or an unreasonable application of clearly established law, but holding that petitioner's claim of cumulative error was without merit because none of his individual claims of error or prejudice had any merit); Forrest v. Fla. Dep't of Corr., 342 F. App'x 560, 565 (11th Cir. 2009) (noting absence of Supreme Court precedent applying cumulative error doctrine to claims of ineffective assistance of counsel, but holding that the petitioner's cumulative error argument lacked merit because he did not establish prejudice or the collective effect of counsel's error on the trial); United States v. Perez, 580 F. App'x 795, 804 (11th

Cir. 2014) ("[A] defendant cannot have a valid cumulative error claim if there was no error committed in the first place."). Petitioner is not entitled to relief on Claim Sixteen.

### N.   Claim Seventeen

Petitioner asserts that counsel was ineffective for failing to object to the trial court's use of 2007 jury instructions when he was alleged to have committed the crime in 2005 (Doc. 1 at 35-36). Petitioner argues that the use of the instruction resulted "a Constitutional prohibition against Ex Post Facto Laws." Id.   In addition, to being unexhausted,[10] this argument is meritless. See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state.").

The United States Constitution expressly prohibits states from enacting ex post facto laws. U.S. Const. Art. I, § 10, cl. 1. "The focus of the ex post facto inquiry is not on whether a legislative change produces some ambiguous sort of 'disadvantage'

---

[10] Petitioner admits that this claim has not been raised in state court and asserts that the United States Supreme Court ruling in Martinez v. Ryan, 132 S. Ct. 1309 (2011) excuses the default (Doc. 1 at 36). Because it is easier to address this claim on the merits, and because the claim is not "substantial" under Martinez, Petitioner's exhaustion of this claim will not be further discussed. Id. at 1312 ("To overcome the [procedural] default, a prisoner must also demonstrate that the underlying ineffective-assistance-at-trial claim is substantial."); see also discussion infra Claims Eighteen and Nineteen Part III(O).

[to covered offenders] . . . but on whether any such change alters the definition of criminal conduct or increases the penalty by which a crime is punishable." <u>California Dep't of Corr. v. Morales</u>, 514 U.S. 499, 506 n.3 (1995).

Florida Statute § 800.04 and its definition of "sexual activity" did not change between 2005 and 2008. Although the jury instruction on this claim was slightly modified, the newer instruction did not misstate the elements of the crime; make it easier to convict Petitioner of the charged offense; or expose Petitioner to greater punishment. To the contrary, the portion of the 2005 standard jury instruction that would have been applicable to Petitioner was substantially identical to the instruction read. [11] Thus, there was no ex post facto violation,

---

[11] The court instructed the jury that, to prove the crime of lewd or lascivious battery, the State must prove *inter alia* that the victim was under the age of sixteen and that:

> Ramon Sirias encouraged, forced, or enticed [B.E.] to engage in any act involving sexual activity. "Sexual activity" means oral, anal or vaginal penetration by or union with the sexual organ of another, or the anal or vaginal penetration of another by any other object."

(T. at 403). The 2005 instruction, which Petitioner argues should have been read instead, stated that to prove the crime, the state would need to show that Petitioner "committed an act upon [B.E.] in which the sexual organ of [Petitioner] penetrated or had union with the anus, vagina, or mouth of B.E." <u>See</u> Exhibit P, attached to petition (Doc. 4).

and counsel had no grounds on which to raise an ex post fact violation. Counsel is not ineffective for failing to preserve or argue a meritless claim. <u>Freeman v. Att'y Gen., Fla.</u>, 536 F.3d 1225, 1233 (11th Cir. 2008). Claim Seventeen is both unexhausted and denied on the merits.

### O.   Claim Eighteen and Claim Nineteen

In Claim Eighteen, Petitioner asserts that he was denied his constitutional right to the effective assistance of post-conviction counsel because post-conviction counsel failed to raise the ground that a Confrontation Clause violation occurred when Petitioner was not present when the law firm hired to represent him filed a stipulation for substitution of counsel (Doc. 1 at 37).  In Claim Nineteen, Petitioner asserts that he was denied his constitutional right to the effective assistance of post-conviction counsel because post-conviction counsel failed to raise a claim of judicial vindictiveness based upon the disparity between the state's initial plea offer and the ultimate sentence imposed. <u>Id.</u>  Petitioner asserts that the Supreme Court's ruling in <u>Martinez v. Ryan</u>, 132 S. Ct. 1309 (2012) allows him to raise the claims for the first time in a federal habeas petition (Doc. 1 at 37, 39). Petitioner's reliance on <u>Martinez</u> is misplaced.

First, the AEDPA makes it clear that ineffective assistance of post-conviction counsel is not an independent ground for § 2254 relief. 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence

of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254). Moreover, "a petitioner cannot rely on the ineffective assistance of post-conviction counsel to establish cause to excuse a procedural default because there is no constitutional right to an attorney in state post-conviction proceedings." Gore v. Crews, 720 F.3d 811, 816 (11th Cir. 2013) (citing Coleman, 501 U.S. at 752).

Next, the Martinez ruling does not apply to the claims of trial court error Petitioner attempts to raise here. In Martinez, the United States Supreme Court held that procedural default will not bar a federal habeas court from hearing substantial claims of ineffective assistance of counsel at trial if, in initial-review collateral proceedings, there was no counsel or counsel in that proceeding was ineffective.[12] Martinez' equitable rule applies solely to ineffective assistance of trial counsel claims and has not been interpreted to excuse the procedural default of all claims not properly raised in state court. Martinez, 132 S. Ct. at 1315. The Supreme Court explained that "Coleman held that an attorney's negligence in a postconviction proceeding does not establish

---

[12] In 2013, the Supreme Court confirmed that the Martinez ruling applied to prisoners who technically had the ability to bring their ineffective assistance claims on direct appeal of their conviction, but for all intents and purposes had to bring it in their first habeas petition. Trevino v. Thaler, 133 S. Ct. 1911, 1921 (2013).

cause, and this remains true except as to initial-review collateral proceedings for claims of ineffective assistance of counsel at trial." Id. at 1316.  The Court continued:

> The rule of Coleman governs in all but the limited circumstances recognized here. The holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts. It does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial, even though that initial-review collateral proceeding may be deficient for other reasons.

Id. at 1320 (internal citations omitted).  Here, Petitioner's sole argument as to the cause for his procedural default of these claims of trial court error is predicated on his post-conviction attorney's alleged failure to raise Claims Eighteen and Nineteen on direct appeal.  Under this reasoning, Martinez cannot apply to excuse Petitioner's failure to properly raise his claim of ineffective assistance of post-conviction counsel (or, more precisely, appellate counsel) in state court.

Petitioner has failed to demonstrate cause for not raising these claims in the state courts or actual prejudice resulting from the errors of which he complains.  Nor does the actual innocence exception apply in this case.  Claims Eighteen and Nineteen are dismissed as unexhausted and procedurally barred.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## IV.  Certificate of Appealability[13]

Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability ("COA"). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El, 537 U.S. at 335-36. Petitioner has not made the requisite showing in these circumstances.

Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

---

[13] Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Id. As this Court has determined that Petitioner is not entitled to habeas corpus relief, it must now consider whether Petitioner is entitled to a certificate of appealability.

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1.    The Florida Attorney General is **DISMISSED** as a named Respondent.

2.    Claims One through Sixteen of the 28 U.S.C. § 2254 petition for habeas corpus relief filed by Ramon Serrud Sirias (Doc. 1) are **DENIED**; Claim Seventeen is **DENIED** or alternatively, **DISMISSED** as unexhausted and procedurally barred; Claims Eighteen and Nineteen are **DISMISSED** as unexhausted and procedurally barred.

3.    Petitioner is **DENIED** a certificate of appealability.

4.    The Clerk of Court is directed to terminate any pending motions, enter judgment accordingly, and close this case.

**DONE** and **ORDERED** in Fort Myers, Florida on this ___15th___ day of September, 2015.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

SA: OrlP-4
Copies: Ramon Serrud Sirias
Counsel of Record